IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BYRON JOSHUA HOLTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 20-cv-1136-RJD |
| KRISTOPHER THARP ) | |
| and STEVE RIDINGS, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. 52). Plaintiff Byron Holton filed the instant lawsuit pursuant to 42 U.S.C. § 1983, asserting a claim of unconstitutional conditions of confinement at Madison County Jail. (Doc. 20). After the threshold review, Plaintiff was allowed to proceed on the following claim:

> Count 1: Beginning in February of 2020, Defendants subjected Plaintiff to unconstitutional conditions of confinement at the Jail that included denial of a bed leading to back pain/injury.

(Doc. 23). Defendants filed a motion for summary judgment (Doc. 52), and Plaintiff responded (Doc. 54). For the reasons set forth below, Defendants' motion is **GRANTED**.

**Factual Background**

On or about February 11, 2020, Plaintiff was booked in Madison County Jail (the "Jail") as a pretrial detainee, facing charges of first-degree murder. (Doc. 52-1, pp. 6-8, 15). Plaintiff alleges that for the first three months of his detention at the Jail, he was not provided with a cell

1

due to overcrowding (Doc. 52-1, pp. 8-10). Instead, he was forced to sleep on a mattress in a dayroom, along with other detainees. (Doc. 52-1, pp. 8-9). He was provided a blanket but not a pillow. (*Id.*). In May 2020, Plaintiff was moved to a cell that became available. (Doc. 52-1, p. 10). In January 2021, while still being detained at the Jail, Plaintiff was involved in an altercation and was sent to Alton City Jail for approximately two months. (Doc. 52-1, p. 10). Upon his return in March 2021, Plaintiff was again housed in a dayroom for approximately four additional months due to all cells being again occupied. (Doc. 52-1, pp. 10-11). During his second stay at the Jail's dayroom, Plaintiff was again provided with a mattress and a blanket. (Doc. 52-1, p. 11).

Plaintiff alleges that being housed in the dayroom without being provided a bed frame violated his Eight Amendment rights against cruel and unusual punishment. (Doc. 54, p. 4). He alleges that Defendants are liable for the alleged constitutional violation because they were responsible for the Jail's general oversight. (Doc. 52-1, pp. 12-13). He further claims that he experienced and continues to experience back pain as a result of being forced to sleep directly on the floor mattress. (Doc. 52-1, p. 13). He was seen by a doctor in Madison County during the time that he was detained in the Jail, and he also sought medical care after he was transferred to West Virginia, where he is currently incarcerated. (Doc. 52-1, pp. 13-13). None of the doctors seeing him for his back pain gave him a diagnosis or prescribed him any medication. (Doc. 52-1, pp. 13-13). Plaintiff further claims that he suffered emotional distress because he was afraid of spider bites or other inmates attacking him or stepping on him while he was sleeping on the floor mattress. (Doc. 52-1, p. 15; Doc. 54, p. 3).

Defendants filed a motion seeking summary judgment on several grounds. (Doc. 52). First, they claim that Plaintiff sleeping on a mat or portable bunk is not an objectively serious

condition to constitute a violation of Plaintiff's due process rights as a pretrial detainee. (Doc. 52, pp. 3-4). Next, Defendants claim that giving Plaintiff a floor assignment was an objectively reasonable response to the Jail's overcrowding and that Defendants also lacked the requisite *mens rea* for an unconstitutional conditions of confinement claim under the Fourteenth Amendment. (Doc. 52, pp. 4-5). Defendants alternatively argue that they are entitled to summary judgment on grounds of qualified immunity. (Doc. 52, pp. 6-7). Plaintiff filed a response to the motion, arguing that sleeping inmates on the floor without an elevated bed is in violation of the Illinois County Jail standards, which require that inmates are provided with a rigidly constructed metal bed with a solid or perforated metal bottom, securely anchored to the floor or wall or a concrete sleeping surface. (Doc. 54, p. 4). He claims that the Jail's failure to comply with the Illinois County Jail standards by housing Plaintiff in the dayroom and not providing him a bed frame is a violation of his Eight Amendment rights against cruel and unusual punishment. (Doc. 54, p. 4).

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Seventh Circuit has stated that summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). The moving party bears the initial burden of producing evidence that identifies those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e)(2). The non-moving party may not rely merely on allegations or denials in its own pleading. *Id.* The opposing party must, instead, go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## Discussion

The analysis of a condition of confinement claim is two-fold. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). The Plaintiff must first prove that the conditions of confinement were

"objectively serious enough to amount to a constitutional deprivation." *Id.* To be objectively serious, the conditions of confinement must result in the denial of "'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Prison and jail officials must provide pretrial detainees and convicted prisoners with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities" and other "minimal civilized measure of life's necessities." *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). Whether the conditions of confinement are objectively serious enough to amount to a constitutional violation depends on the totality of the circumstances, including "the duration and severity" of the plaintiff's exposure to the alleged unconstitutional conditions. *Id.* at 824.

Once an objectively serious condition of confinement has been established, the analysis then turns to whether the defendant had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Because pretrial detainees have not been criminally convicted, a less rigid *mens rea* standard is required to prevail in conditions of confinement claims brought under the Fourteenth Amendment compared to similar claims brought by convicted inmates under the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–397 (2015); *Hardeman*, 933 F.3d at 823. As to the former, courts must apply the objective reasonableness standard, while for the latter, the standard is that of deliberate indifference. *See Kingsley*, 576 U.S. at 396–397; *Hardeman*, 933 F.3d at 823.

Under the Fourteenth Amendment's objective reasonableness standard applying to conditions of confinement claims of pretrial detainees, the plaintiff must show that the jail official "acted purposely, knowingly, or recklessly" with respect to the conditions of confinement and that

such actions were "objectively unreasonable." *Mays v. Emanuele*, 20-2653, 2021 WL 2935374 (7th Cir. July 13, 2021) (citing *Hardeman*, 933 F.3d at 824, 827 (Sykes, J., concurring); *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018)).  In other words, there are two separate state-of-mind questions, with the first referring to the defendant's state of mind in implementing the specific conditions of confinement and the second referring to the defendant's knowledge or intent that said conditions posed an excessive risk to the plaintiff's health or safety.  *Kingsley*, 576 U.S. at 395; *Miranda*, 900 F.3d at 350-352.

For the first inquiry, the plaintiff will need to establish that the jail official "acted purposefully, knowingly, or perhaps even recklessly" in imposing the objectively serious conditions of confinement.  *See Miranda*, 900 F.3d at 353; *Kingsley*, 576 U.S. at 396 (explaining that, in the context of an excessive force claim, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on his claim); *Hardeman*, 933 F.3d at 824, 827 (Sykes, J., concurring).  The second inquiry, however, is purely objective and focuses on whether the jail official's response to the serious conditions of confinement is "objectively unreasonable" in that it is "not rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398; *see also Miranda*, 900 F.3d at 353-54; *Hardeman*, 933 F.3d at 822-23. To reach its conclusion as to the objective reasonableness of the conduct, the court must consider the facts and circumstances of the particular case viewed "from the perspective of a reasonable officer on the scene."  *Kingsley*, 576 U.S. at 397; *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), *cert. denied,* 142 S. Ct. 69 (2021).  The court must further consider the government's legitimate interests in managing the jail facility where the plaintiff is detained.  *Kingsley*, 576 U.S. at 397;

*Mays*, 974 F.3d at 820).  Absent "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Mays*, 974 F.3d at 820 (quoting *Bell v. Wolfish*, 441 U.S. 520, 548, (1979)).

Because at all relevant times to his claim Plaintiff was a pretrial detainee and not an inmate, his claim arises under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause.  Accordingly, the Court will analyze this case under the objective reasonableness standard laid out in *Kingsley* and *Miranda*.  Defendants argue that Plaintiff failed to establish the first prong of the test for prevailing under a Fourteenth Amendment's Due Process claim, that is an objectively serious condition of confinement that deprives a pre-trial detainee of "the minimal civilized measure of life's necessities" or pose "a substantial risk of serious harm."  Defendants specifically cite authority from the Fifth Circuit and argue that there is no constitutional right for prisoners to have elevated beds and that Plaintiff's placement on a "portable bunk" did not violate the Fourteenth Amendment.  (Doc. 52, pp. 3-4).

First, the Court notes that, to the extent Defendants argue or imply that Plaintiff was provided with a portable bunk during his housing at the Jail's dayroom, such allegation is not supported by the cited record.  Plaintiff's deposition, on which Defendants solely rely in support of their motion for summary judgment, shows that Plaintiff was only provided with a mattress and a blanket during the relevant timeframes.  (Doc. 52-1, pp. 8-9, 11).  The only reference to a bunk is regarding Plaintiff's current sleeping accommodation at a federal correctional center in West Virginia.  (Doc. 52-1, p. 14).  Further, the Court rejects Plaintiff's contention that his constitutional due process rights have been violated because the Illinois County Jail Standards

7

require a solid bed. It is well established that Section 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations such as the Illinois County Jail Standards. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.2003).

Accordingly, the Court considers whether Plaintiff's housing in a dayroom from February 2020 through May 2020 and from March 2021 through approximately July 2021, during which time he was forced to sleep on a floor mattress due to overcrowding, is an objectively serious condition of confinement that deprived him of the "minimal civilized measure of life's necessities" or posed "a substantial risk of serious harm." Considering Plaintiff's conditions of confinement as a whole and taking into account their severity and duration, the Court finds in the negative. It is well settled that overcrowding is not in and on itself unconstitutional as long as it does not lead to deprivation of the "minimal civilized measure of life's necessities" or pose a substantial risk of serious harm such as an increase in violence. *See Rhodes*, 452 U.S. at 348; *Lewis v. Justus*, 314CV01301SMYPMF, 2016 WL 1555157, at *3 (S.D. Ill. Apr. 18, 2016) (citation omitted) ("overcrowded conditions may be unconstitutional if . . . they lead to increased violence or deprivations of medical care, food or sanitation"). Further, as Defendants correctly point out, sleeping on a floor mattress is not *per se* a constitutional violation, and several circuits have held that nothing in the Constitution requires elevated beds for prisoners. *See Sanders v. Kingston*, 53 Fed. Appx. 781, 783 (7th Cir. 2002) ("We know of no case holding that the Eighth Amendment requires elevated beds for prisoners . . . ."); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir.1986) (noting that nothing in the Constitution requires elevated beds for prisoners); *see also Rodmaker v. Krienhop*, No. 4:14-cv-070-TWP-TAB, 2014 WL 3671016 at *2, 2014 U.S. Dist. LEXIS 100067 at *6 (S.D. Ind. July 23, 2014) (collecting cases) (pretrial detainees have no constitutional right to

8

have an elevated bed and may be required to sleep with their mattress on the floor); *Hines v. Sheahan*, 845 F. Supp. 1265, 1269 (N.D. Ill. 1994) ("requiring an inmate to sleep on a mattress on the floor does not in itself rise to the level of a constitutional violation").  However, sleeping on the floor of a dayroom could potentially amount to a constitutional violation where, for instance, the dayroom is lit up the entire day, causing the detainees to not receive adequate rest.  *See Woods v. Gladieux*, 1:22-CV-383-HAB-SLC, 2023 WL 2645990, at *2 (N.D. Ind. Mar. 27, 2023).

In *Grissom v. Watson*, 21-CV-274-JPG, 2023 WL 2263636, at *8 (S.D. Ill. Feb. 28, 2023), the court found that a county jail detainee who slept for 16 days in a stackable plastic bunk (a "boat") due to overcrowding was not subject to an objectively serious condition of confinement that deprived him of the "minimal civilized measure of life's necessities" or posed "a substantial risk of serious harm."  *Grissom*, 21-CV-274-JPG, 2023 WL 2263636, at *.  The Court reasoned that the boat provided a defined and adequate space designed for a detainee to sleep slightly raised off the ground.  *Id.*  The court further noted that while sleeping in a boat posed inherent problems such as exposure to insects and the possibility of injury from other detainees tripping and falling on the plaintiff, those problems were not serious enough to amount to a constitutional violation, especially given the fact that plaintiff slept on a boat only for 16 days.  *Id.*

In *Stephens v. Cottey*, 145 Fed. Appx. 179, 181 (7th Cir. 2005), the Seventh Circuit held that the inmate plaintiff had failed to establish an unconstitutional conditions of confinement claim under the Eighth Amendment against jail officials on the basis that he was forced to sleep for three days on a bedframe without a mattress and for an additional five days on a mattress without a bedframe. *Stephens*, 145 Fed. Appx. at 181.  The court reasoned that those conditions were not extreme, especially in light of their short duration, and that while the plaintiff had sought medical

9

treatment for his sore back, he was merely prescribed cold pack and analgesics. *Id.* Likewise, in *Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008), the Third Circuit held that pretrial detainees who were forced to sleep on floor mattresses in their cells for a period of three to seven months due to overcrowding had failed to establish a violation of their Fourteenth Amendment due process rights in light of the fact that the plaintiffs had access to the dayrooms for physical activity and there was no record that plaintiffs suffered any diseases as a result of sleeping on the floor mattresses. *Id.* at 235.

Here, it appears that Plaintiff was required to sleep on the floor mattress in the dayroom for two separate periods of four months in 2020 and 2021. This duration, in total, is longer than the one in *Grissom* and *Stephens* but is close to the one in *Hubbard*. While eight, or even four, months is not a particularly short timeframe, the sleeping arrangement here was relatively better compared to the one in *Stephens* in that Plaintiff was at all times provided a mattress and was never forced to sleep directly on the floor. Further, similarly to the plaintiff in *Stephens*, Plaintiff sought medical treatment for back pain but did not receive a diagnosis and was not prescribed any medication. Accordingly, Plaintiff's allegation of a back injury resulting from him sleeping on the floor mattress is not substantiated by the record. The Court further acknowledges that sleeping on the floor mattress posed inherent problems from being close to the floor, such as being exposed to the risk of spider bites or posing a tripping hazard to other detainees. However, like in *Grissom,* Plaintiff's broad allegations of a generalized risk of harm, without more specific references to instances where the Plaintiff or other detainees were attacked or injured by others tripping on them or of spider bites that led to serious health injuries, are insufficient to establish Plaintiff's exposure to a "substantial risk of serious harm." In sum, while the conditions Plaintiff described have been

unpleasant, they did not lead to intolerable conditions, deprive him of one of life's necessities, or expose him to a substantial risk of serious harm.

Even assuming, *arguendo*, that the conditions of confinement in the Jail deprived Plaintiff of the minimal civilized measure of life's necessities or exposed him to a substantial risk of serious harm, the Court finds that those conditions were not objectively unreasonable so as to amount to a constitutional violation. As set forth above, to prevail on a conditions of confinement claim under the Fourteenth Amendment, Plaintiff needs to establish that Defendants acted with the requisite culpable state of mind, that is, that Defendants "acted purposefully, knowingly, or perhaps even recklessly" in imposing the objectively serious conditions of confinement and that their response to the serious conditions of confinement was "objectively unreasonable" in that it was "not rationally related to a legitimate nonpunitive governmental purpose" or was "excessive in relation to that purpose." *See Kingsley*, 576 U.S. at 398; *Miranda*, 900 F.3d at 353-54; *Hardeman*, 933 F.3d at 822-23. Here, there is no doubt that Defendants knowingly and purposefully gave Plaintiff a floor assignment to deal with the overcrowding. However, this is insufficient to establish the requisite *mens rea* in the absence of any evidence that the floor assignment was "not rationally related to a legitimate nonpunitive governmental purpose" or was "excessive in relation to that purpose." And there is nothing in the record supporting such a finding. Plaintiff does not allege that Defendants gave him a floor assignment in the dayroom as a punishment. Instead, he contends that the floor assignment in the dayroom was due to overcrowding and that he was transferred to the first cell that became available based on priority. Managing an overcrowded jail is a legitimate nonpunitive governmental purpose. *See Hubbard*, 538 F.3d at 233 (finding that the practice of triple-celling pretrial detainees was a response to the legitimate nonpunitive

11

governmental purpose of dealing with severe overcrowding). The record does not support a finding that housing incoming detainees in the dayroom and giving them a floor assignment with a mattress until a cell became available was excessive in relation to the legitimate nonpunitive purpose of dealing with the Jail's overcrowding. Accordingly, Plaintiff has failed to establish that Defendants' response to the conditions of confinement was objectively unreasonable to amount to a constitutional violation.

For the reasons set forth above, Defendants are entitled to summary judgment. Because the Court finds Plaintiff has failed to establish a Fourteenth Amendment claim of unconstitutional conditions of confinement, the Court does not need to address Defendants' alternative basis for summary judgment on the grounds of qualified immunity.

## Conclusion

Based on the foregoing, the Defendants' Motion for Summary Judgment (Doc. 52) is **GRANTED**. Plaintiff's claims against Defendants Kristopher Tharp and Steve Ridings are **DISMISSED WITH PREJUDICE,** and the Clerk of Court is **DIRECTED** to enter judgment accordingly. All pending motions are denied as moot, and all upcoming court settings are vacated.

**IT IS SO ORDERED.**

**DATED: February 20, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**